UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JENNIFER N. F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. 4:23-CV-1582-JSD |
| ) | |
| MICHELLE KING, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant.[1] ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Jennifer F. ("Plaintiff") for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons stated herein, the Court affirms the Social Security Administration's denial of Plaintiff's claim for DIB.

   **I.   Background**

On January 13, 2022, Plaintiff filed an application for DIB benefits. (Tr. 189-95) In her Disability Report, Plaintiff alleged she became disabled on December 31, 2015. (Tr. 10, 146) Plaintiff's claim was initially denied and again denied reconsideration on July 13, 2022. (Tr. 10, 82) Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on February 3, 2023. (Tr. 32) The ALJ issued an unfavorable decision, dated May 3, 2023. (Tr. 7-24)

---

[1] Michelle King is now the Acting Commissioner of Social Security. She is automatically substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d).

At Step 1, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period of disability, from her alleged onset date of disability on December 31, 2015 through her date last insured on March 31, 2018. (Tr. 12, ¶ 2) At Step 2, the ALJ found that Plaintiff's severe medically determinable impairments were: migraine headaches; degenerative disc disease of the cervical spine; chronic pain syndrome/myofascial pain; anxiety disorder; depressive disorder; and alcohol abuse. (Tr. 12, ¶ 3) At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13, ¶ 4)

In the opinion, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity (RFC) to perform light work, as defined in 20 CFR § 404.1567(b), except:

> she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours; and stand and/or walk for 6 hours. She can frequently reach overhead to the left, and frequently reach overhead to the right. For all other reaching she can reach frequently to the left and can reach frequently to the right. The claimant can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, stoop frequently, kneel frequently, crouch frequently, crawl frequently. The claimant should avoid even moderate exposure to working at unprotected heights. She should avoid even moderate exposure to moving mechanical parts. She should avoid even moderate exposure to dust, odors, fumes and pulmonary irritants. She should avoid concentrated exposure to extreme cold. She should avoid concentrated exposure to extreme heat. She should avoid even moderate exposure to vibration. She can work in moderate noise. She is able to perform simple, routine, and repetitive tasks but not at a production rate pace. She can interact with coworkers and the public occasionally. [S]he is able to make simple, work-related decisions.

(Tr. 14-15, ¶5) At Step 4 of the sequential evaluation, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (Tr. 18, ¶6) At Step 5, however, the ALJ found, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Tr. 18, ¶10) On October 26, 2023, the Appeals Council

denied Plaintiff's Request for Review of Hearing Decision/Order. (Tr. 1) *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Plaintiff filed this appeal on December 8, 2023. (ECF No. 1) On August 5, 2024, Plaintiff filed a Brief in Support of Complaint. (ECF No. 16) The Commissioner filed a Brief in Support of the Commissioner's Decision on August 21, 2024. (ECF No. 18)

As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

### II.     Legal Standard

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work

3

activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**III.    Discussion**

"The key issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole." *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006) (citing *Sultan v. Barnhart,* 368 F.3d 857, 862 (8th Cir. 2004)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). In determining whether evidence is substantial, this Court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis*, 477 F.3d at 1040 (citing *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000)). "If substantial evidence supports the Commissioner's conclusions, this court does not

4

reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*

### A. Development of the Record

Plaintiff contends that the ALJ failed to fully and fairly develop the record because he did not obtain a medical opinion in support of the RFC assessment. (ECF No. 16 at 4) Plaintiff notes that the record does not contain any medical evidence that addresses her ability to function in the workplace and that supports the ALJ's RFC assessment. *Id.* Plaintiff asserts that the Eighth Circuit does "not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality. Something, however, is needed." *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020).

Plaintiff outlines the medical records regarding her mental impairments. On May 27, 2022, Defendant's medical consultant, Raphael Smith, PsyD, wrote: "Review of available [medical evidence of record (MER)] note [Plaintiff] was being treated with Prozac for depression and anxiety, with no records in file from a psych professional. There is inadequate functional information prior to the [date last insured (DLI)]. There is insufficient evidence to assess." (Tr. 62) On July 12, 2022, Defendant's medical consultant, Charles Watson, PsyD, reviewed Plaintiff's mental impairments claim and found "insufficient evidence to adjudicate the claim" during the period of disability. (Tr. 70)

As to Plaintiff's physical impairments, Defendant's medical consultant, Daniel Gwartney, MD, reviewed the medical reports and found "the evidence in the file is insufficient to rate limitations on a particular impairment, symptoms, or alleged limitations because the evidence necessary for a full medical evaluation is not available." (Tr. 61) On July 12, 2022, Defendant's

5

medical consultant, Sheri Bethmann, reviewed the medical records regarding Plaintiff's physical impairments and found "insufficient evidence to adjudicate the claim" during the period of disability. (Tr. 68-69)

Plaintiff asserts that the ALJ disagreed with these medical consultants and wrote, "after hearing the claimant's testimony and receiving additional medical evidence, the [ALJ] has determined that sufficient evidence exists prior to the date last insured to adjudicate this claim." (Tr. 17) Plaintiff claims that the ALJ could not do this and instead was required to obtain a medical opinion to translate the updated medical evidence and testimony into a RFC assessment. (ECF No. 16 at 6, 8) Plaintiff notes that the ALJ limited her to a reduced range of light work but complains that the ALJ failed to explain how the evidence supported "his (implicit) findings" that Plaintiff would never be off task, need an unscheduled break, or miss work because of her migraines. (ECF No. 16 at 8) Plaintiff contends that the ALJ failed to mention her March 2, 2018 MRI, which was reviewed by Plaintiff's neurologist, Prityi Rani M.D. (Tr. 320) Dr. Rani speculated that "the [T2/FLAIR hyperintensity] is possibly due to chronic migraine headache." *Id*. On March 23, 2018, Dr. Rani confirmed that a second MRI results could be related to migrainous angiopathy, given Plaintiff's history of migraine headaches. (Tr. 315) Plaintiff argues that the ALJ was not qualified to interpret this MRI. (ECF No. 16 at 9)

Further, Plaintiff maintained that her testimony and treatment supports a finding of debilitating migraine headaches. (ECF No. 16 at 9). Plaintiff testified that her migraines prevent her from working full-time because they may last three to four days, usually consecutively. (Tr. 38) She testified she receives 31 Botox injections every 3 months and takes Ubrelvy and meloxicam to control her migraines. (Tr. 38, 303, 610, 615, 626, 632, 643, 654, 1202, 1209) Plaintiff claims that when she has a migraine she must stay away from noise and light, cannot

6

work, and cannot care for her child. (ECF No. 16 at 10) In sum, Plaintiff claims that the ALJ "failed to explain how the evidence provides support for the finding that Plaintiff: would never be off task; would never need an unscheduled break at work; would never miss work as a result of her migraine headaches; and can tolerate noise." *Id*. Further, Plaintiff asserts that the administrative decision is outside the "zone of choice" because the ALJ failed to properly evaluate the RFC because he did not include evidence that detracts from his conclusion. (ECF No. 16 at 11)

The Court, however, affirms the decision of the Commissioner because the ALJ is not required to base his RFC finding on any medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) ("However, there is no requirement that an RFC finding be supported by a specific medical opinion.") (affirming RFC without medical opinion evidence); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (same)).

The Court notes that, her absent vague and broadbrush complaint that the ALJ improperly fashioned Plaintiff's RFC without medical evidence, particularly with respect to her mental impairments, Plaintiff does not indicate how the mental RFC was deficient. Plaintiff also does not state what additional mental limitations should have been included. (ECF No. 16 at 4-11) Thus, the Court holds that Plaintiff has not met her burden to establish her RFC or that the indicated RFC was deficient as to her mental impairments. *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (citing *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) ("Although it is

7

the ALJ's responsibility to determine the claimant's RFC, 20 C.F.R. §§ 404.1545(a); 404.1546(c), the burden is on the claimant to establish his or her RFC.").

Further, the Court holds that substantial evidence support the RFC indicated by the ALJ, *i.e.*, a very restrictive mental RFC, limiting Plaintiff to simple work. (Tr. 14-15) The ALJ found that, during the relevant period of December 31, 2015 through March 31, 2018, Plaintiff took psychotropic medications, but did not receive treatment from a psychologist, psychiatrist, or counselor, despite a November 2016 recommendation for such treatment. (Tr. 16, 681, 718) Further, Plaintiff reported being alert and orientated with normal mood, affect, attention, and concentration at her examinations during the relevant period. (Tr. 16, 678, 683, 688, 696, 701, 703, 708, 712, 721, 735-36) Thus, as to Plaintiff's mental status, the Court holds that substantial evidence supports the ALJ's determination that Plaintiff's mental impairments allowed her to still perform simple work. (Tr. 14-15)

As to her physical status, Plaintiff exclusively references her migraines as the source of her limitations. (ECF No. 16 at 4-11) As stated, Plaintiff claims that the ALJ "failed to explain how the evidence supported" the ALJ's "implicit" findings that Plaintiff's RFC did not account for time off-task, unscheduled breaks, absences due to migraines, or a more restrictive noise limitation. (ECF No. 16 at 8, 10) Plaintiff, however, has not shown that such limitations were necessary. *See Buford,* 824 F.3d at 796.

Further, the Court finds that Plaintiff's complaints that Defendant did not discuss her March 2018 MRIs are misplaced. Although Plaintiff argues that the ALJ "failed to mention" and was "not qualified to interpret" (ECF No. 16 at 8-9) the MRIs, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (citing *Black v. Apfel,* 143

8

F.3d 383, 386 (8th Cir. 1998)). In addition, the Court notes that the MRIs do not demonstrate that her migraines were disabling. Rather, at most, the first MRI showed an abnormality that was "possibl[y] due to chronic migraine headache". (Tr. 684) Then, a second MRI on March 20, 2018 showed the abnormality was unchanged. (Tr. 852-54) The doctor reviewing the MRI found the abnormality was "nonspecific and of doubtful significance" but "could be related to migrainous angiopathy given the history of migraine headaches." *Id*. Contrary to Plaintiff's inference that the ALJ failed to discuss a significant test result supporting her disability, the Court finds that the MRIs simply provided a possible cause for Plaintiff's migraines, which the ALJ already found to be a severe impairment at step two. (Tr. 12)

Although Plaintiff claims that her treatment for her migraines with Botox injections, Ubrelvy, and meloxicam, supports her claim of disability, Defendant demonstrates that most of those treatments were not during the relevant period of disability. *See* ECF No. 18 at 5. Plaintiff did not start taking Ubrelvy until March 2022, which is nearly four years after the relevant period ended. (Tr. 930-31) Similarly, Plaintiff reported in November 2017 that she was not taking meloxicam in November 2017, and her prescription for meloxicam was discontinued in January 2018 through at least the relevant period. (Tr. 299, 313, 330, 333, 338) And, only one of Plaintiff's Botox injections occurred (January 2018) occurred during the relevant period. *Id*.

Indeed, the ALJ considered Plaintiff's Botox injections and determined that her Botox injections did not support a greater limitation than the RFC. The ALJ found that the medical records showed that Plaintiff did not routinely receive Botox treatment for migraines during the relevant treatment. (Tr. 16) Although Plaintiff testified that she received 31 injections every three months since 2017 (Tr. 16, 38), the records showed the Botox injections in 2017 were for neck pain. (Tr. 16, 699, 701) Indeed, Plaintiff did not receive Botox injections for headaches until

9

January 2018. (Tr. 16, 696, 1196) The ALJ reviewed Plaintiff's records and discerned that Plaintiff underwent injections on January 25, 2018 and she was feeling better, with 75% pain relief, by January 30. (Tr. 692, 862-63)

Further, the ALJ found that Plaintiff's inconsistent reporting of the frequency and duration of her headaches did not support her allegations of disabling headaches. (Tr. 16) Plaintiff's March 2018 report to her doctor stated that her headaches had increased in the last two years to around 15 headaches per month, each lasting three to four days at a time. (ECF No. 16 at 8-9 (citing Tr. 39, 315)). However, upon examination, the ALJ found Plaintiff's treatment records did not support this claim. Plaintiff did not mention headaches until March 2018, the end of the relevant period, when she stated each lasted from one to three days. (Tr. 16, 315, 681) Thus, Plaintiff's inconsistent testimony undermines the reliability of her headache reporting. (Tr. 16)

Likewise, Plaintiff's failure to use prescribed medications also undermines her claims that her migraines were severe. When Plaintiff first reported her headaches in November 2016, she indicated they were severe only "at times". (Tr. 16, 717) Although Plaintiff was prescribed Imitrex, Plaintiff reported on December 5, 2016 that she was not taking this medication. (Tr. 16, 716, 719) The Court agrees with the ALJ that Plaintiff's failure to take her prescribed medication indicates that her headaches were not as severe as claimed. "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." *Singh v. Apfel,* 222 F.3d 448, 453 (8th Cir. 2000). "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." *Guilliams v. Barnhart,* 393 F.3d 798, 802 (8th Cir. 2005); *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Hensley*, 829 F.3d at 933–34. "If an impairment can be controlled

10

by treatment or medication, it cannot be considered disabling." *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (quotation omitted); *see* 20 C.F.R. § 404.1530(a) ("to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work"); *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'").

The Court also agrees that Plaintiff's activities of daily living did not support her disability claim. "In evaluating a claimant's RFC, consideration should be given to the quality of the daily activities and the ability to sustain activities, interests, and relate to others *over a period of time* and the frequency, appropriateness, and independence of the activities must also be considered." *Leckenby v. Astrue,* 487 F.3d 626, 634 (8th Cir.2007) (internal quotations and citations omitted) (emphasis in original). Here, Plaintiff testified that she could cook, clean, drive, and do laundry when she did not have a migraine. (Tr. 17, 45) Also, per her work activity report, she engaged in work activity as an esthetician during the relevant period, in 2016-2017. (Tr. 17, 173, 181, 204) However, the records demonstrate that she also engaged in work beyond what she reported. In November 2016, Plaintiff told her doctor she was working as a bartender and, in October 2017, she supplied to her doctor that she was working as a dance instructor. (Tr. 17, 706, 717) "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (citing *Naber v. Shalala,* 22 F.3d 186, 188–89 (8th Cir. 1994)). "[I]nconsistencies between [Plaintiff's] subjective complaints and her activities diminish her credibility." *Goff*, 421 F.3d at 792 (citing *Riggins v. Apfel,* 177 F.3d 689, 692 (8th Cir.1999) (finding activities such as driving his children to work, driving his wife

to school, shopping, visiting his mother, taking a break with his wife between classes, watching television, and playing cards were inconsistent with plaintiff's complaints of disabling pain)).

Finally, contrary to Plaintiff's claim, the Court agrees that the ALJ did not draw impermissible inferences instead of obtaining a medical opinion. *Cf.* ECF No. 16 at 10. As repeatedly held, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (same)). Indeed, the Court holds that the ALJ's determination is supported "by substantial evidence on the record as a whole." *Buford v. Colvin*, 824 F.3d 793, 795 (8th Cir. 2016) (citing *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011); *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)). The ALJ found that Plaintiff's impairments could cause the symptoms outlined by Plaintiff but that her statements regarding the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence or other evidence in the record. (Tr. 170) "With the medical record adequately developed," the ALJ was not required to seek additional information as long as he considered all of the relevant information, which he did. *Hensley*, 829 F.3d at 932.

In sum, the Court finds that substantial evidence supports the ALJ's finding. "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Wiese v. Astrue,* 552 F.3d 728, 730 (8th Cir. 2009); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). Here, there was sufficient evidence documenting Plaintiff's limited symptoms and impairments, which supported the ALJ's decision that Plaintiff's conditions were adequately controlled by medication and/or that she had not sought additional treatment, and she was not

12

disabled. The ALJ's determination fell within the zone of choice, which this Court will not disturb. *See Winship v. Saul*, No. 4:20-CV-00039-MDH, 2021 WL 1055196, at *2 (W.D. Mo. Mar. 19, 2021) (citing *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) ("Courts 'defer heavily to the findings and conclusions of the Social Security Administration' and will disturb the Commissioner's decision only if it falls outside the 'zone of choice.'").

### IV.        Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

**IT IS FURTHER ORDERED** that the Clerk shall reflect on the docket that Michelle King, Acting Commissioner of Social Security, is the proper defendant pursuant to Fed. R. Civ. P. 25(d).

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of February, 2025.